IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

   v.                  Case No. 21-cr-116-wmc

CODY WALKER-NELSON,

   Defendant.

---

GOVERNMENT'S SENTENCING MEMORANDUM

---

The United States of America, by Timothy M. O'Shea, United States Attorney for the Western District of Wisconsin, by Corey C. Stephan, Assistant United States Attorney for that district, hereby submits this sentencing memorandum.

**1. Nature and Circumstances of the Offense**

On October 1, 2021, the defendant engaged in a very dangerous crime spree in Superior, Wisconsin and Duluth, Minnesota, during which he stole several cars, attempted to rob a bank, and ended up in an armed standoff with a SWAT team.

A series of 911 calls began at approximately 11:00 a.m. (Dkt. 22 "PSR," ¶ 9). The defendant attempted to steal a Subaru WRX, stole a Chevy Tahoe and Ford Escape, and led police on several high-speed chases. (PSR, ¶¶ 10-12). Approximately 90 minutes after the initial calls, a citizen reported that the defendant stole seven firearms from his home, specifically those charged in Count 3 of the Indictment. (PSR, ¶¶ 11, 23, and 24; Dkt. 2.)

At 1:30 p.m., the defendant drove the Ford Escape up to the drive-through window of the Superior branch of Associated Bank. (PSR, ¶¶ 13-15.) He knocked on the window to get the attention of the teller and, when they gestured for him to "hold on," he began banging on the window. The teller approached the drive-through window and saw the defendant standing at the window in a "shooting stance" with a handgun pointed at her. He gestured for her to come towards him, but she ducked out of the way and yelled for help.

Bank security video captured the event where the defendant took up a shooting position behind the opened door of the Escape. (PSR, ¶ 15.)



2



The defendant then drove off prompting another 911 call about him driving against traffic at high speeds on the Bong Bridge heading to Minnesota. (PSR, ¶ 16.) He then tried to steal on off-duty police officer's personal vehicle at a gas station in Duluth, before again fleeing. (PSR, ¶ 17.)

He then initiated an encounter with two citizens, waiving a pistol around, firing it, and accusing them of "working for the feds." (PSR, ¶ 18.) He took a wallet from one of them and left them with two of the stolen firearms.

Law enforcement then began to converge on the defendant, who had taken up refuge in an apartment. (PSR, ¶ 19.). The apartment building had previously been a bank, and the specific apartment that the defendant was in had a large safe vault in it. Witnesses saw the defendant take several firearms into the building, and two SWAT teams were called to the scene. A law enforcement drone showed the defendant going in and out of the vault.

During the several-hour standoff that followed, the defendant fired at the front door of the apartment and the law enforcement drone, disabling it. (PSR, ¶ 20.)



Ultimately tear gas was deployed and the SWAT team had to forcibly breech the front during, at which time the defendant fired a round from the vault through the bedroom door. (PSR, ¶ 21.) Officers used more tear gas, and the defendant retreated to hide in the vault and attempted to start a fire using a cannister of propane. Numerous bullet holes were found in the apartment, including one where the bullet that passed through the front door, travelled through the hallway, into a neighboring apartment. (PSR, ¶ 22.)

Law enforcement recovered two firearms (a 12-gauge shotgun and .38 caliber revolver) from the citizens who were involved in the encounter in Duluth. (PSR, ¶ 23.) In the standoff apartment, officers found the silver 9mm pistol used in the bank robbery, a .45 caliber pistol, a .270 caliber rifle, a 22-250 caliber rifle, and an AR15 rifle. (PSR, ¶ 24.)

The defendant admitted to going on a "drug-induced rampage" where he stole seven guns and attempted to rob the Associated Bank. (PSR, ¶ 25.) He later said that he was looking for guns to kill himself and had been awake for several days after using "bad methamphetamine." (PSR, ¶ 26.)

He had a prior felony conviction for first degree burglary from 2014 in Minnesota. (PSR, ¶ 28.)

### 2. The History and Characteristics of the Defendant

The defendant is 31 years old, and his criminal history started with juvenile adjudications for property damage, second degree assault with a dangerous weapon, and first-degree arson of a dwelling. (PSR, ¶¶ 48-50.)

His adult record continues with:

- another arson (age 18); convictions for domestic assault, disorderly conduct, and theft of firearms with a 15-month prison sentence (age 20);
- a first-degree burglary with 45 month prison sentence (age 21);
- felon in possession of a firearm with 60-month prison sentence, third degree burglary, impersonating an officer, and violating a domestic abuse order (age 22);

5

- violating a domestic abuse order with 33-month prison sentence, fifth degree assault with 29 month prison sentence (age 26); and
- giving an officer a false name (age 29).

(PSR, ¶¶ 51-61.)

### 3. The Need for the Sentence Imposed

The defendant has shown through his past conduct that he creates a significant danger to the community, has a propensity to steal and possess firearms, and is not deterred by being sent to prison. The conduct in this federal case certainly is an escalation of what was already a troubling history. Lengthy incarceration is necessary to protect society and specifically deter him from committing crimes when he is again released from prison.

The sentencing guidelines include an adjustment for recklessly creating a substantial risk of death or serious bodily injury to another. (PSR, ¶ 30.) But given the defendant's significant criminal history, and the discreet charges including reckless discharge of a firearm in St. Louis County, Minnesota (PSR, ¶ 71), that two-level offense adjustment does not adequate address the seriousness of that conduct.

Therefore, the government is recommending a guidelines sentence in this case that is consecutive to that pending St. Louis County case. That will address the severity of the conduct in this district, but also allow the sentencing judge in St. Louis County to decide if the very egregious conduct there warrants a longer sentence.

### 4. Conclusion

For these reasons, the government respectfully recommends that a lengthy period of incarceration consistent with the sentencing guidelines and consecutive to the pending St. Louis County case is appropriate.

Dated this 30th day of August 2022.

Respectfully submitted,

TIMOTHY M. O'SHEA
United States Attorney

By: /s/
COREY C. STEPHAN
Assistant United States Attorney