# FEDERAL DEFENDER SERVICES
## OF WISCONSIN, INC.
LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Jessica Arden Ettinger
Anderson M. Gansner
Gabriela A. Leija
Dennise Moreno
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Alexander P. Vlisides

22 East Mifflin Street
Suite 1000
Madison, Wisconsin 53703

Telephone 608-260-9900
Facsimile 608-260-9901

August 30, 2022

Honorable William M. Conley
United States District Court Judge
120 North Henry Street
Madison, Wisconsin 53703

> Re:  *United States v. Cody Walker-Nelson*
>     Case no. 21-cr-116-wmc

Dear Judge Conley:

In anticipation of the sentencing hearing, the defense submits this memorandum. Cody Walker-Nelson is here because of the worst day of his life. He was suicidal, intoxicated, and sleep-deprived. He acted chaotically and planned to take his own life. His attempted bank robbery speaks to this: his attempt lasted less than a minute before he drove away without a discernible reason. Walker-Nelson takes responsibility for failing to manage both his mental health conditions and his addiction, resulting in his dangerous actions. He understands he will serve a significant sentence, and will commit himself to treatment in working towards a sustainable life.

Walker-Nelson requests a guidelines sentence of 108 months. The guidelines in this case are 100-125 months. PSR ¶ 114. Because all of Walker-Nelson's conduct was considered by the guidelines as relevant conduct, the guidelines recommend that this sentence be imposed to run concurrently to any other sentence resulting from relevant conduct. USSG § 5G1.3(c). Importantly, unless this Court specifically grants prior credit, he will not receive credit for the 11 months he has spent in custody, effectively making the requested sentence a 10-year sentence near the high end of the guidelines sentence. As such, Walker-Nelson requests a sentence of 108 months, concurrent to any yet-to-be-

imposed sentences in the related state cases: State of Wisconsin case number 2021CF444 and State of Minnesota case number 69DU-CR-21-3071.

### I.       Walker-Nelson's difficult journey and the lead-up to this offense.

Walker-Nelson has struggled with his mental health and addiction, which each have their roots in an extraordinarily difficult childhood. He had no relationship with his father. PSR ¶ 81. His step-father was the father figure early in his life, but was sexually and violently abusive. PSR ¶ 83. This sustained and destructive abuse affected Walker-Nelson deeply, as it would any child. He remembers his early childhood fondly, but feels that this abuse changed him. PSR ¶ 83. During his pre-teen years, he was repeatedly hospitalized with psychiatric concerns, including hallucinations. PSR ¶ 93. He struggled with thoughts of suicide. PSR ¶ 94. He had difficulty reporting the abuse, which exacerbated both his psychiatric stress and frustrated proper treatment. It was a horrific situation.

Eventually he was removed from the home because of the abuse, but his trajectory had changed. PSR ¶ 84. He began getting in fights at school and using marijuana. PSR ¶ 84. His grandmother provided him a safe home, but was not able to give him the structure to address his trauma. PSR ¶ 84.

As an adult, his drug addiction also developed under sad circumstances. At 21, he began struggling with painful medical issues in his kidneys and urinary tract. PSR ¶ 97. He was prescribed Percocet and eventually became addicted. PSR ¶ 97. When he lost his prescription, he turned to heroin to satisfy his reliance on opiates. PSR ¶ 97.

After his release from prison in 2019, he began to build some stability. He was able to maintain sobriety through the use of suboxone and a commitment to his treatment. PSR ¶ 100. He got a job as a cook, and then later got a raise by moving to work in a factory. PSR ¶ 107-108.

This employment had been an accomplishment because Walker-Nelson has a number of chronic medical conditions that have at times interfered with his employment. He suffers from Loin Pain Hematuria Syndrome, which causes significant pain and requires him to use catheters. PSR ¶ 90. He also suffers seizures. PSR ¶ 90. Although not debilitating, these conditions and others noted in the presentence report have forced him to miss or limit work opportunities.

Unfortunately, his sobriety did not last. In 2020, the Covid-19 pandemic hit and support was harder to come by. In-person NA meetings were largely cancelled. A close

friend who he had relied on for support had relapsed. Unfortunately, Walker-Nelson backslid and his methamphetamine use escalated. PSR ¶ 98. He eventually lost his job and slipped deeper into addiction. He went through a break up. His mental health deteriorated and he became suicidal.

It is clear that Walker-Nelson's actions on October 1, 2021, were very dangerous and equally clear that he was not of sound mind. He acted irrationally. He could not recall much of what happened. PSR ¶ 26. His mental health conditions were unmedicated, he was heavily using methamphetamine, and he had not slept in days. PSR ¶ 26. These facts are not purely mitigating, because it is of great concern that a future relapse could place people in danger. But it is the truth and helps explain why his actions were so unexplainable.

## II. Although a significant sentence is warranted, a consecutive sentence would actually hinder Walker-Nelson's rehabilitation.

Walker-Nelson is absolutely in need of rehabilitation. He needs and wants treatment for his addiction. He needs to continue to treat his mental health. He hopes to improve his job training. A sentence of effectively 10 years will provide ample time for these things to take place.

Because rehabilitation does not increase linearly with each added year of a sentence. There are productive skills to be learned in prison, such as those above, but those skills must eventually be applied in a real-world setting. And there are also habits and coping mechanisms to be learned in prison that are not helpful to reintegrating to the community. Long prison sentences can lead to "institutionalization," meaning habits built in prison that are unnecessary or irrational in non-prison life.

Counsel is reminded of a defendant that this Court sentenced a few months ago, who represented some of these issues. He returned from prison after more than a decade, with his life skills atrophied. He would revert to prison behaviors like walking in tiny circles for exercise. His relationships with family were distant after so much time apart. And after only a few months of freedom, he was back in a cell. There is, of course, no way to say that the long prison sentence in particular caused the recidivism. But it is an example of the continuing scars of long prison sentences and the way that they can run counter to the goals of sentencing. Which is to say, at some point, more prison time does not mean more rehabilitation.

## Conclusion

Walker-Nelson has long struggled with his mental health and addiction. On the worst day of his life, he lost control. He hopes to spend the next many years proving that this suicidal, dangerous behavior will not define the rest of his life. Years of mental health and substance treatment, plus a slow transition out of custody and federal supervision can help support his eventual safe transition back into the community.

Walker-Nelson requests a sentence of 108 months, concurrent to any yet-to-be-imposed sentence in State of Wisconsin case number 2021CF444 and State of Minnesota case number 69DU-CR-21-3071. Because of those pending cases, this will not be the only sentence Walker-Nelson faces because of his actions on October 1, 2021. A concurrent sentence is appropriate not only because it is recommended by the guidelines, but also because it will allow the state courts to determine for themselves whether those sentences should run concurrent, partially concurrent or consecutive to this sentence. The requested sentence of effectively 10 years strongly protects the community, while avoiding the rote stacking of punishments imposed for the same conduct.

Thank you for your attention to this matter.

Sincerely,

*/s/ Alex Vlisides*

Alex Vlisides
Associate Federal Defender